**FILED**
**CLERK**

9/1/2015 3:48 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RALPH GIUGLIANO,

                     Plaintiff,

   -against-

FS² CAPITAL PARTNERS, LLC, along
with LANCE MURPHY, BILL WOLFE,
and JOHN SHAIN *in their individual
capacity*,

                    Defendants.
-------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-7240(ADS)(GRB)

**APPEARANCES:**

**ZABELL & ASSOCIATES, P.C.**
*Attorneys for the Plaintiff*
1 Corporate Drive, Suite 103
Bohemia, NY 11716
      By:   Saul D. Zabell, Esq., Of Counsel

**KLEHR HARRISON HARVEY BRANZBURG LLP**
*Attorneys for the Defendants*
1835 Market Street, Suite 1400
Philadelphia, PA 19103
      By:   William A. Harvey, Esq.
            Carianne Torrissi, Esq.
            Paige Melanie Willan, Esq., Of Counsel

**SPATT, District Judge:**

On December 12, 2014, the Plaintiff Ralph Giugliano ("Giugliano" or the "Plaintiff") commenced this action against the Defendants FS² Capital Partners, LLC ("FS²"), Lance Murphy ("Murphy"), Bill Wolfe ("Wolfe"), and John Shain ("Shain"), alleging violations of federal, state, and city discrimination laws;

violations of the New York State Labor Law; and various common law causes of action, including breach of contract, conversion, and unjust enrichment.

On February 23, 2015, the Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6), based on a lack of subject matter jurisdiction and the Plaintiff's failure to state claims upon which relief can be granted.

On March 9, 2015, the Plaintiff opposed the motion to dismiss and cross-moved for leave to amend his Complaint.

For the reasons set forth herein, the Defendants' motion to dismiss is granted in part and denied in part. The Plaintiff's motion for leave to amend is denied without prejudice.

## I.    Background

The following facts are drawn from the Complaint and are construed in favor of the Plaintiff.

Giugliano is a resident of Suffolk County, New York. At the time of his Complaint, he was fifty-four years old.

$FS^2$ is a Delaware corporation. The Defendant Murphy is the president of $FS^2$; the Defendant Wolfe is a Senior Manager; and the Defendant Shain is the Managing Director.

## A.    The Plaintiff's Employment

In or about August 2010, Giugliano was employed by $FS^2$ as a salesperson. His job title was Regional Sales Director.

Giugliano and FS² entered into an employment agreement, also known as a Registered Representative Agreement (the "Agreement"), which set forth the terms and conditions of Giugliano's employment. The Court notes that the Plaintiff did not attach a copy of the Agreement to the Complaint. However, the Defendants attached a copy to a declaration by Carianne Torrissi, Esq. (the "Torrissi Decl."), which they submitted in support of the instant motion. Later in this opinion, the Court will discuss the propriety of considering the Agreement and other documentary evidence in adjudicating the instant motion. However, at this time, without expressing an opinion as to that issue, the Court briefly summarizes certain relevant facts relating to the Agreement.

Giugliano alleges that, pursuant to the Agreement, he was assigned a designated geographic sales territory within which he was to transact business on behalf of FS² (the "Territory"). At the start of his employment, Giugliano's Territory allegedly included Eastern Pennsylvania, Northern New Jersey, and New York. According to Giugliano, at all relevant times his Territory included New York City. In this regard, the Plaintiff alleges that he regularly performed his job duties within New York City, including meeting with clients and third parties, effectuating sales transactions, and attending conferences, all in furtherance of FS² business. Giugliano alleges that he was to receive a sales commission based upon transactions that he executed within his Territory.

Relevant here, the Agreement contains the following provisions:

Associate's [Giugliano] employment may be terminated at any time, for any reason, with or without Cause, by either Associate, on the one hand, or the Broker [FS²], on the other hand. Associate's employment and the employment relationship between the parties is "at-will", voluntarily entered into and will be for no specific period. As a result, Associate will be free to resign at any time, for any reason or no reason, as deemed appropriate, and the Broker shall have the same right to terminate Associate's employment for any reason or for no reason, as deemed appropriate.

*     *     *

Associate will provide services set forth on Exhibit A attached hereto and as may be modified from time to time by the Broker without resulting in a rescission of this Agreement.

*     *     *

Associate will be provided the remuneration set forth on Exhibit B attached hereto. Associate agrees that any commissions to be charged on sales of commissionable products shall be established from time to time by the Broker and that Associate will abide by and adhere to any schedules for commissions established from time to time by the Broker . . .

*     *     *

Associate's Territory shall be metro New York City, Westchester County, New York, Southern Connecticut to New Haven, and Northern New Jersey as currently divided between the Mid-Atlantic and metro New York Territory. The Territory is subject to change or modification in the sole discretion of the Broker.

*     *     *

No change or modification of this Agreement shall be valid unless the same be in writing and signed by all parties hereto.

The Plaintiff alleges that, between 2011 and 2013, the size of his Territory was reduced by approximately 62 percent. He alleges that portions of his Territory were reassigned to younger and less experienced salespersons. Allegedly, these

younger salespersons received commissions to which Giugliano was entitled based on transactions that he initiated.

According to the Complaint, between 2011 and 2013, while Giugliano's Territory was being decreased, the sales goals established for him by FS² increased by 40 percent.

Giugliano alleges that, throughout his employment, he was a top-performing salesperson and generated substantial revenues for FS².

**B.  The Allegations of Discrimination**

The Plaintiff alleges that he was subjected to employment discrimination based on his age.

For example, on one occasion, during a national sales meeting, the Defendant Murphy allegedly displayed a photograph of Giugliano's teeth on a PowerPoint presentation and told the audience, "when you get old, you must buy new teeth." Giugliano does not allege when this incident occurred.

In January 2012, one Brian Boulerice, a non-party member of the Plaintiff's sales team, allegedly stated to Giugliano that "management feels that you are not scalable."  Giugliano does not allege any supporting details relating to this remark, including what he believes it was intended to mean or how it relates to his age.  He simply alleges that it was derogatory.

In January 2013, in reference to Giugliano's ability to operate technological devices, Murphy allegedly stated, "you can't teach an old dog new tricks."

Also in January 2013, the Defendant Shain allegedly said of Giugliano's attire, "you are too old to wear that type of clothing." Shain allegedly then pointed to a younger employee and stated, "that is the type of clothing he should be wearing."

In December 2013, during a year-end meeting, Murphy allegedly asked the Plaintiff if he was "too old to keep up with the younger guys" in an exercise class.

Also in December 2013, Shain allegedly said to Giugliano: "Your teeth are still white, but you are much grayer than the last time I saw you. As a matter of fact, I think you are one of the oldest Franklin Square employees."

Further, in December 2013, Boulerice allegedly identified Giugliano as the "oldest wholesaler."

Giugliano alleges that many other similar remarks were made, but he fails to provide any supporting details, including the content, timing, and speaker of the alleged remarks.

In addition, Giugliano alleges that unidentified members of the senior management at $FS^2$ caused him to be excluded from at least seven off-site conferences. The Plaintiff asserts that such conferences were a fundamental component of his position and were aimed at building relationships with clients. He does not provide the dates of these alleged conferences.

Giugliano also alleges that his support staff was reassigned away from him. Allegedly, he repeatedly requested that his support staff be replaced, but the

Defendant Wolfe refused to do so. According to Giugliano, younger, less experienced, and less productive salespersons were assigned his support staff.

Of note, Wolfe allegedly told the Plaintiff that the refusal to provide him with support staff was punishment for "filing an 'action against the company.'" Giugliano does not provide the date of this alleged comment or any other related details.

On or about March 27, 2014, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge"). Although he does not specifically say so, the Court presumes that Wolfe's remark about Giugliano "filing an action against the company" relates to the EEOC Charge. Giugliano did not attach a copy of the EEOC Charge to the Complaint for the Court's reference.

Apparently, on or about April 30, 2014, Giugliano filed an amended EEOC Charge (the "Amended EEOC Charge"). The Complaint contains no allegations concerning the Amended EEOC Charge and Giugliano does not attach a copy for the Court's reference. However, again, the Defendants attached the Amended EEOC Charge to the Torrissi Declaration, which was submitted in support of the instant motion.

In the Amended EEOC Charge, Giugliano identified the alleged cause of his discrimination as his age. In support of his Amended EEOC Charge, he annexed an affidavit containing factual assertions that substantially mirror the Complaint in this action.

In or about April 2014, FS² held an event to celebrate the public listing of one its funds on the New York Stock Exchange. According to the Plaintiff, he was not invited to this event, despite having allegedly been responsible for raising ten percent of the fund's assets. He alleges that younger, less experienced, and less productive salespersons were invited.

According to the Plaintiff, on or about June 10, 2014, Giugliano's employment with FS² ended in a "constructive termination" as a result of the Defendants' actions.

On October 23, 2014, the EEOC issued the Plaintiff a Notice of Right to Sue (the "Right to Sue Letter").

## C.     The Instant Action

Based on the allegations outlined above, the Plaintiff asserts the following claims in this action: (i) FS² intentionally discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); (ii) FS² retaliated against Giugliano for filing the EEOC Charge, in violation of the ADEA, the NYSHRL, and the NYCHRL; (iii) FS² and individual Defendants Murphy, Wolfe, and Shain failed to pay Giugliano commissions on sales transactions that he initiated and to which he was entitled, in violation of New York Labor Law ("NYLL") § 191(1)(c); (iv) FS² also failed to pay Giugliano commissions on sales transactions in violation of New York common law;

(v) FS² breached the Agreement by materially modifying its terms without the Plaintiff's written consent, in violation of New York common law; and (v) FS² unjustly enriched itself at Giugliano's expense, in violation of New York common law.

## D.     The Motion to Dismiss

On February 23, 2015, FS², Murphy, Wolfe, and Shain (collectively, the "Defendants") moved to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

In particular, the Defendants contend as follows:  (i) Giugliano's claims based on age discrimination and discriminatory retaliation under the ADEA, the NYSHRL, and the NYCHRL should be dismissed because Giugliano has not plausibly alleged that he suffered an adverse employment action; (ii) Giugliano's claims based on age discrimination and discriminatory retaliation against the individual Defendants should be dismissed because the ADEA, the NYSHRL, and the NYCHRL do not provide for individual liability; (iii) Giugliano's claim against the individual Defendants should be dismissed because they were not named as respondents in the Amended EEOC Charge and thus the Court lacks subject matter jurisdiction over claims relating to them; (iv) Giugliano's claim based on common law breach of contract should be dismissed because his employment was at-will and thus FS² was free to unilaterally modify the terms and conditions of the parties' employment relationship; (v) Giugliano's claim based on unpaid commissions under the NYLL should be dismissed because such a claim requires the Plaintiff to possess

an enforceable contract right to such wages, which Giugliano lacks; (vi) Giugliano's claims for conversion and unjust enrichment should be dismissed because they are impermissibly duplicative of his breach of contract claim; and (vii) Giugliano's claims for conversion and unjust enrichment should also be dismissed because he failed to plausibly plead the essential elements of these claims.

Giugliano opposed the motion and requested that, in the event the Court dismisses any of his claims, he be granted leave to amend the Complaint.

The Court will consider each of the parties' contentions below.

## II.    Discussion

### A.    The Applicable Legal Standards

#### 1.    The Standard for Dismissal under Fed. R. Civ. P. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Alston v. Sebelius, 13-cv-4537, 2014 U.S. Dist. LEXIS 123613, at *8-*9 (E.D.N.Y. July 31, 2014) (Report and Recommendation) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)), adopted, 2014 U.S. Dist. LEXIS 122970 (E.D.N.Y. Sept. 2, 2014). "[A] 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" Id. at *9 (quoting MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 361 (E.D.N.Y. 2010)).

### 2. The Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." Otis-Wisher v. Medtronic, Inc., 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

### 3. The Standard for Dismissal under Fed. R. Civ. P. 15(a)

Generally, a party requires leave of the Court in order to amend his or her pleading. See Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.

However, courts have held that a "bare request to amend a pleading" contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15. See, e.g., Curry v. Campbell, 06-cv-2841, 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particular[it]y in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought") (quoting AT&T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999)); see also Evans v. Pearson Enters., Inc., 434 F.3d 839, 853 (6th Cir. 2006) ("We agree with several of our sister

circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)") (quoting <u>Confederate Mem'l Ass'n, Inc. v. Hines</u>, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Under these circumstances, courts, in their discretion, may hold the motion to dismiss in abeyance pending the filing of the proposed pleading or deny the motion to amend without prejudice.  <u>See</u> <u>AT&T Corp.</u>, 184 F.R.D. at 521.

The Court notes that the Plaintiff fails to formally cross-move for leave to amend or to provide a proposed amended pleading.  Instead, in his opposition to the Defendants' motion to dismiss, the Plaintiff states that "in the unlikely event this Court should [dismiss any of his claims], [h]e respectfully reserve[s] the right to amend the Complaint subject to the governing provisions of the federal and local rules."  Pl. Memo of Law at 2.  In addition, the Plaintiff devotes a section of his brief to asserting that he "stands ready to amend the Complaint" if the Court "holds that certain allegations are deficient."  <u>Id.</u> at 20-21.  In this regard, he contends that "any shortcomings in the Complaint should be addressed through amendment, not dismissal."  <u>Id.</u>

The Court finds that this bare request for leave to amend, unaccompanied by a proposed amended pleading, is procedurally improper under Fed. R. Civ. P. 15 and, in its discretion, denies the request on that basis without prejudice.

**B.     As to Whether the Court May Consider Evidence Outside the Pleading**

In this case, the Defendants submitted documentary evidence, namely, the Agreement and the Amended EEOC Charge, in support of their motion to dismiss. As a threshold issue, the Court must determine whether such evidence may be considered in adjudicating the instant motion.

" '[W]here a party challenges the court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings.' " Alston, 2014 U.S. Dist. LEXIS 123613, at *9 (quoting Baur v. Comm'r of Soc. Sec., 10-cv-3781, 2011 U.S. Dist. LEXIS 52128 (E.D.N.Y. May 16, 2011)).

Thus, because the Defendants invoke Rule 12(b)(1) to dismiss certain of the Plaintiff's claims, the Court may consider the Agreement and the Amended EEOC Charge in adjudicating those aspects of the motion.

However, as to those portions of the motion which invoke Rule 12(b)(6), the analysis is different.  In this regard, it is well-settled that "[t]he materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited." Armand v. Osbourne, 11-cv-4182, 2014 U.S. Dist. LEXIS 23911, at *9 (E.D.N.Y. Feb. 24, 2014).  In fact, "a court considering a . . . motion to dismiss for failure to state a claim generally may not consult evidence outside the pleadings." Vailette v. Lindsay, 11-cv-3610, 2014 U.S. Dist. LEXIS 114701, at *8 (E.D.N.Y. Aug. 18, 2014). Rather, in adjudicating such a motion, the Court may only consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Environmental Servs., 7 F. Supp. 2d at 270 (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)).

" 'Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion.' " Environmental Servs., 7 F. Supp. 2d at 270 (quoting Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)).

Here, Giugliano does not contest the Defendants' submission of the documentary evidence outlined above. Nor does he contend that the Court should refrain from considering it. Further, the Court has little difficulty concluding that the Agreement and the Amended EEOC Charge clearly fall within recognized categories of documents that are appropriate to consider on a Rule 12(b)(6) motion.

Initially, the Plaintiff explicitly references each of these documents in the Complaint. Not only does the Amended EEOC Charge form an essential precondition to Giugliano's ability to maintain the federal causes of action he asserts in this lawsuit, see, e.g., Compl. ¶ 10 (asserting the EEOC Charge as a jurisdictional prerequisite), but it also forms the basis of his discriminatory retaliation claim. Indeed, Giugliano alleges that the act of filing the Amended

EEOC Charge constitutes protected activity in response to which FS² retaliated. See, e.g., Compl. ¶¶ 83-86 (asserting the EEOC Charge as the factual predicate for a claim based on discriminatory retaliation).

In addition, the Agreement forms the entire basis of Giugliano's breach of contract claim. See Compl. ¶¶ 115-18 (asserting the Agreement as the factual predicate for a claim based on breach of contract).

Therefore, it is clear that these documents are integral to, and incorporated by reference in, the Complaint. See Jean-Louis v. Warfield, 898 F. Supp. 2d 570 (E.D.N.Y. 2012) (Spatt, J.) (finding an Apartment Lease Agreement, which was submitted by the defendant in support of a motion to dismiss, to be incorporated by reference in the plaintiff's complaint, as it formed the basis of the plaintiff's claims); see also Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (observing that a common example of the material properly considered on a 12(b)(6) motion is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls"); Arcari v. 46th St. Dev. LLC, 10-cv-3619, 2011 U.S. Dist. LEXIS 22899, at *9-12 (S.D.N.Y. Mar. 1, 2011) (holding that Termination Agreements not attached to the complaint could nevertheless be considered on a Rule 12(b)(6) motion because they were referenced in the complaint and were directly relevant to the plaintiff's claims).

Accordingly, in the exercise of its discretion, the Court will consider the Agreement and the Amended EEOC Charge in adjudicating the instant motion.

**C.  As to Whether Giugliano Has Stated a Plausible Claim for Age Discrimination Under the ADEA**

"The ADEA protects employees over forty against age-based discrimination." Hogan v. Metromail, 107 F. Supp. 2d 459, 463-64 (S.D.N.Y. 2009).  In order to state a prima facie claim based on age discrimination, the Plaintiff must plausibly allege that:  (i) he was a member of a protected class; (ii) was qualified for his position; and (iii) suffered an adverse employment action; (iv) under circumstances giving rise to an inference of discrimination.  See Guerra v. Jones, 08-cv-0028, 2010 U.S. Dist. LEXIS 25168, at *17 (N.D.N.Y. Mar. 17, 2010), aff'd, 421 F. App'x 15 (2d Cir. 2011). "The plaintiff must make more than mere conclusory allegations of age discrimination."  Moultrie v. VIP Health Care Servs., 08-cv-457, 2009 U.S. Dist. LEXIS 22413, at *14 (E.D.N.Y. Mar. 19, 2009).

Only the third element, namely, whether Giugliano suffered an adverse employment action, is at issue in this case.   In this regard, Giuliano alleges that FS$^2$ discriminated against him by taking actions that he contends amount to a constructive termination.  These actions include reducing the size of the Plaintiff's sales Territory and redistributing those geographic areas to younger salespeople; increasing the sales goals established for him; refusing to assign support staff to him; and excluding him from conferences and company events.

The Defendants contend that these actions, even if proven, do not constitute adverse employment actions because they were specifically contemplated in the parties' Agreement.   In particular, the Agreement provides that FS$^2$ could unilaterally modify the scope of Giugliano's sales Territory; could unilaterally

modify Giugliano's job responsibilities; and could terminate Giugliano for any reason or for no reason at all. Thus, according to the Defendants, Giugliano has not plausibly alleged a necessary element of his claim, namely, that he suffered an adverse employment action.

Initially, it is well-settled that, in the context of employment discrimination, "the fact that employment was at will is simply not dispositive." Lauture v. IBM, 216 F.3d 258, 262 (2d Cir. 2000). Indeed, " 'even though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause' " such as discrimination based on age. Id. at 263 (citing Fedayi v. Planned Parenthood Ass'n, 160 F.3d 1048, 1051-52 (5th Cir. 1998)); see Simon v. Manufacturers Hanover Trust Co., 849 F. Supp. 880, 883 (S.D.N.Y. 1994) (noting that "the age discrimination statutes prevent employers from firing even at-will employees with a discriminatory motive"). Consequently, the Court disagrees with the Defendants' contention that Giugliano is prevented from maintaining this action under the ADEA simply because he was an at-will employee.

Similarly, it may be true that the Agreement confers upon FS[2] the right to make certain discretionary decisions regarding Giugliano's employment, such as reducing his sales Territory. However, the Court is not persuaded that, by signing the Agreement, Giugliano waived his right to later assert that such decisions, while perhaps within the scope of the contract, nevertheless were motivated by discriminatory animus. See Boscarello v. Audio Video Sys., 784 F. Supp. 2d 577,

584 n.8 (E.D. Va. 2011) (noting that "[i]t is well-settled that employers may not make discretionary decisions . . . in a retaliatory or discriminatory fashion").

The Defendants' interpretation of the Agreement would allow FS$^2$ to circumvent responsibility for allegedly discriminatory acts simply by retaining "sole discretion" to dictate the terms and conditions of the employment relationship. Where, as here, such a maneuver would work to preclude an employee from pleading an essential element of a discrimination claim, the result, in the Court's view, would be an unjustifiable limit on the employee's ability to avail himself of the protections afforded by the federal anti-discrimination laws. Other courts have found that similar efforts may be contrary to public policy. See, e.g., EEOC v. Cosmair, Inc., L'Oreal Hair Care Div., 821 F.2d 1085, 1090 (5th Cir. 1987) (holding that an individual may not contract away his or her right to file an EEOC charge).

In any event, at this time, the Court need not determine whether or not the Agreement is enforceable. Even if it is, neither Giugliano's status as an at-will employee nor the broad discretion to alter the terms of his employment that the contract grants to FS$^2$ insulates the company from allegations that its actions violated the federal anti-discrimination laws. In sum, the Court finds that the language of the contract, without more, is an insufficient basis upon which to dismiss the Plaintiff's claim.

The Defendants do not assert any additional grounds for dismissing the Plaintiff's cause of action based on federal age discrimination.

Accordingly, the Defendants' motion, to the extent it seeks to dismiss Giugliano's ADEA discrimination claim for failure to plausibly allege an adverse employment action, is denied.

## D. As to Whether Giugliano Has Stated a Plausible Claim for Discriminatory Retaliation Under the ADEA

In order to state a prima facie claim for discriminatory retaliation under the ADEA, the Plaintiff must plausibly allege that: (i) he was engaged in an activity protected under the ADEA; (ii) FS[2] was aware of his participation in the protected activity; (iii) he was subject to an adverse employment action; and (iv) there is a nexus between the protected activity and the adverse action taken. See Shub v. Westchester Cmty. College, 556 F. Supp. 2d 227 (S.D.N.Y. 2008).

Again, only the third element, namely, that the Plaintiff was subjected to an adverse employment action, is at issue here. In this regard, the Defendants again assert only that Giugliano failed to plausibly plead an adverse employment action because he was employed at will and the complained of conduct was contemplated in the parties' Agreement. Thus, for the same reasons articulated above, the Court rejects the Defendants' contention and finds their singular reliance upon the contract language insufficient to dismiss the Plaintiff's retaliation claim under the ADEA.

Accordingly, to the extent the Defendants seek to dismiss Giugliano's ADEA retaliation claim for failure to plausibly allege an adverse employment action, their motion is denied.

**E.      As to Whether Giugliano Has Stated Plausible Claims for Age
Discrimination and Discriminatory Retaliation Under the NYSHRL
and NYCHRL**

In support of their motion to dismiss the Plaintiff's age discrimination and
discriminatory retaliation claims under New York state and city law, the
Defendants again rely only on the same argument outlined above, namely, that
Giugliano failed to plausibly plead an adverse employment action because he was
employed at will and the complained of conduct was contemplated in the parties'
Agreement.

Age discrimination and discriminatory retaliation claims under the NYSHRL
and NYCHRL are analytically identical to their federal law counterparts.  See
Bakeer v. Nippon Cargo Airlines, Co., 09–cv-3374, 2011 U.S. Dist. LEXIS 90102, at
*125-*126 (E.D.N.Y. July 25, 2011) (Report and Recommendation) (finding, in the
context of a motion to dismiss pursuant to Rule 12(b)(6), that " '[t]he framework for
analyzing NYSHRL and NYCHRL discrimination claims is essentially the same as
under Title VII and the ADEA' "), adopted, 2011 U.S. Dist. LEXIS 89975 (E.D.N.Y.
Aug. 12, 2011) (quoting Butler v. New York Health & Racquet Club, 768 F. Supp. 2d
516.  529-30 (S.D.N.Y. Jan. 26, 2011)); Sicular v. N.Y.C. Dep't of Homeless Servs.,
09-cv-0981, 2010 U.S. Dist. LEXIS 10089, at *101 (S.D.N.Y. Feb. 4, 2010) (Report
and Recommendation) (dismissing NYSHRL and NYCHRL claims for the same
reasons as related ADEA claims; noting that discrimination and retaliation "claims
brought pursuant to the NYSHRL and NYCHRL are analyzed under the same
rubric as Title VII"), adopted, 2010 U.S. Dist. LEXIS 53064 (S.D.N.Y. May 28,

2010), aff'd, 455 F. App'x 129 (2d Cir. 2012). Therefore, for the same reasons articulated above, the Court rejects the Defendants' contention and finds the relevant contract language insufficient to dismiss the Plaintiff's state and city law causes of action.

Accordingly, to the extent the Defendants seek to dismiss Giugliano's age discrimination and discriminatory retaliation claims under the NYSHRL and NYCHRL for failure to plausibly allege an adverse employment action, their motion is denied.

## F.    As to the Defendants' Contentions Relating to Individual Liability

Giugliano asserts only one cause of action against the Defendants Murphy, Wolfe, and Shain in their individual capacities, namely, a claim that they are liable for failing to pay the Plaintiff commissions on certain sales transactions, in violation of the NYLL.

However, in their motion to dismiss, the Defendants ague that any claims against these Defendants based on age discrimination and discriminatory retaliation should be dismissed because the relevant anti-discrimination statutes do not provide for individual liability. However, Giugliano asserts no such claims against the individual Defendants in this case, and the Court will therefore disregard this aspect of the instant motion.

Similarly, the Defendants contend that Giugliano's claims against the individual Defendants should be dismissed because they were not named as respondents in the Amended EEOC Charge, and, thus, the Court lacks subject

matter jurisdiction over such claims. However, as noted above, Giugliano asserts a claim pursuant to the NYLL only as against the individual Defendants. In this regard, the Defendants do not contend that there is an exhaustion requirement under the NYLL which would have required Giugliano to present his wage claims to the EEOC. The Court is not aware of any such requirement.

Accordingly, to the extent the Defendants seeks to dismiss Giugliano's NYLL claim against the individual Defendants Murphy, Wolfe, and Shain based on his failure to name them in the Amended EEOC Charge, their motion is denied.

## G. As to Whether Giugliano Plausibly Stated a Claim for Breach of Contract

"To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: '(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages.'" Frontline Processing Corp. v. Merrick Bank Corp., 13-cv-3956, 2014 U.S. Dist. LEXIS 27571, at *5-*6 (S.D.N.Y. Mar. 3, 2014) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)); see Cacchillo v. Insmed, Inc., 551 F. App'x 592, 593-94 (2d Cir. Jan. 7, 2014) (same). "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." Id. (citing Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Only the third element, namely, whether $FS^2$ breached the Agreement, is at issue here. In this regard, Giugliano alleges that $FS^2$ breached Section 11.02 of the Agreement, which provides that "[n]o change or modification of this Agreement

shall be valid unless the same be in writing and signed by all parties hereto." Giugliano contends that FS$^2$ breached this provision by making the following modifications to the Agreement without his written consent: (i) reducing the size of his sales Territory, which resulted in younger salespersons receiving commissions allegedly due to him; and (ii) increasing the sales goals established for him. Also, in his opposition to the instant motion, the Plaintiff asserts for the first time that FS$^2$ breached the Agreement by "fail[ing] to calculate [his] earned commissions as prescribed under the [ ] Agreement." The Court finds these contentions to be without merit.

Initially, the Court rejects Giugliano's contention that FS$^2$ failed to calculate his commissions as prescribed under the Agreement because this claim is not alleged in the Complaint. See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 263 (E.D.N.Y. 2009) (declining to consider a claim that was not raised in the complaint but was argued in the party's moving papers; noting that a party is not entitled to amend his pleading through his memoranda; collecting cases in accord). Moreover, Giugliano fails to allege any supporting details concerning this claim, including what commissions he claims to have earned and when he earned them; which provision of the Agreement he contends governs the proper method of calculating his commissions; and how FS$^2$ allegedly failed to properly calculate his commissions, if they were calculated at all. The Court finds no plausible basis for a breach of contract claim arising out of alleged miscalculation of commissions.

Similarly, in the Court's view, there is no plausible basis for Giugliano's contention that FS² modified the terms of the Agreement by increasing his sales goals. In this regard, the Plaintiff asserts that the increase in his sales goals "materially changed the core terms and conditions of [his] employment." However, he again fails to identify any term or provision of the contract that was allegedly modified. In fact, he fails to identify any contract language that even addresses these alleged sales goals. It is axiomatic that for a breach of contract claim to exist, the Plaintiff must identify the provisions of the contract that were breached. See Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002), aff'd, 65 F. App'x 736 (2d Cir. 2003). Here, Giugliano's bald assertion that FS² breached the Agreement by modifying some unspecified "core terms and conditions of his employment," is insufficient to pass Rule 12(b)(6) muster. Therefore, in the Court's view, Giugliano has not alleged any plausible basis for a breach of contract claim arising from an increase in his sales goals.

However, Giugliano's contention that FS² breached Section 11.02 by reducing the size of his sales Territory without his written consent requires greater scrutiny. In this regard, the Court reiterates that the Agreement contains the following two relevant provisions:

> Associate's Territory shall be metro New York City, Westchester County, New York, Southern Connecticut to New Haven, and Northern New Jersey as currently divided between the Mid-Atlantic and metro New York Territory. The Territory is subject to change or modification in the sole discretion of the Broker.

*　　*　　*

> No change or modification of this Agreement shall be valid unless the same be in writing and signed by all parties hereto.

(emphasis supplied).

The Defendants contend that, since the Agreement expressly confers upon FS² sole discretion to change or modify Giugliano's Territory, his written consent was not needed in order for FS² to do so.

In opposition, Giugliano contends that Section 11.02, which prohibits modifications to the contract language without the parties' written consent, prevents FS² from unilaterally altering the size of his Territory. He asserts that, at a minimum, an ambiguity exists between these provisions, which must be construed against the drafter, FS².

In the Court's view, established precepts of contract interpretation favor the Defendants' position.

" 'Under New York law . . . whether a contract is ambiguous is a matter of law for the court to decide.' " <u>Wyeth v. King Pharms., Inc.</u>, 396 F. Supp. 2d 280, 286-87 (E.D.N.Y. 2005) (quoting <u>Readco, Inc. v. Marine Midland Bank</u>, 81 F.3d 295, 299 (2d Cir. 1996)). This Court has previously noted the following guiding principles that are relevant to its determination in this case:

> Under New York law, "[t]he cardinal principle for the construction and interpretation of contracts is that the intentions of the parties should control." <u>Roswell Capital Partners, LLC v. Alternative Const. Technologies</u>, 08-cv-10647, 2009 U.S. Dist. LEXIS 15493, at *6 (S.D.N.Y. Feb. 27, 2009) (quoting <u>SR Inten. Business Ins. Co. v. World Center Properties, LLC</u>, 467 F.3d 107, 125 (2d Cir. 2006)) (internal quotations and alterations omitted). In determining what the parties intended, "a court should look first within the 'four corners' of the document" and should "give effect to the 'plain and ordinary' meaning

of its language." <u>Muze, Inc. v. Digital On-Demand, Inc.</u>, 123 F. Supp. 2d 118, 128 n.9 (S.D.N.Y. 2000) (citation omitted); <u>see also</u> <u>Roswell Capital Partners, LLC</u>, 2009 U.S. Dist. LEXIS 15493, at *6 ("In ascertaining the purpose or intent of the parties, 'lest form swallow substance, [the] goal must be to accord the words of the contract their fair and reasonable meaning.' ") (citing <u>Sutton v. East River Sav. Bank</u>, 55 N.Y.2d 550, 555, 450 N.Y.S.2d 460, 435 N.E.2d 1075 (1982)).

<u>Two Locks, Inc. v. Kellogg Sales Co.</u>, 68 F. Supp. 3d 317, 328 (E.D.N.Y. Dec. 19, 2014) (Spatt, J.). " 'A contract is ambiguous where reasonable minds could differ on what a term means, but no ambiguity exists where the alternative construction would be unreasonable.' " <u>Wyeth</u>, 396 F. Supp. 2d at 287 (quoting <u>Readco</u>, 81 F.3d at 299). " 'Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.' " <u>Law Debenture Trust Co. v. Maverick Tube Corp.</u>, 595 F.3d 458, 467 (2d Cir. 2010) (quoting <u>Hunt, Ltd. v. Lifschultz Fast Freight, Inc.</u>, 889 F.2d 1274, 1277 (2d Cir. 1989)).

Of importance here, " '[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.' " <u>Two Locks, Inc.</u>, 68 F. Supp. 3d at 331 (quoting <u>LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.</u>, 424 F.3d 195, 206 (2d Cir. 2005)).

The Court finds no ambiguity in the contract language as a matter of law. Rather, the Agreement clearly and explicitly states that "the Territory is subject to change or modification in the sole discretion of [FS$^2$]." In the Court's view, this language is not susceptible of multiple meanings. On the contrary, it appears clear that the parties intended for FS$^2$ to retain sole decision-making authority over the

geographic Territory that was assigned to Giugliano. The Plaintiff's proposed interpretation of this clause would achieve the opposite result, one that is in conflict with the plain contract language. In particular, under the Plaintiff's proposed construction, the "sole discretion" conferred upon FS$^2$ to dictate the scope of the Plaintiff's Territory would, ultimately, be subject to the Plaintiff's written consent. Such a result would render this clause to be meaningless. In the Court's view, Giugliano's interpretation is unreasonable in the context of this Agreement and will not be adopted by the Court.

In reaching this conclusion, the Court rejects the Plaintiff's contention that Section 11.02 renders the otherwise clear language of the Agreement to be ambiguous. The clear import of that provision is to require Giugliano's written consent before changes are made to the terms of the Agreement itself. However, it is clear that the scope of the Plaintiff's Territory is *not* a term of the Agreement subject to the Plaintiff's written consent. In this regard, Giugliano improperly conflates the idea of changes to the Agreement, which require his written consent, and changes to the scope of his Territory, which do not.

Although the Agreement identifies the geographic regions comprising Giugliano's Territory as they existed at the time of the Agreement, the plain language of the contract contemplates that those regions may change and expressly affords control over such changes to FS$^2$. Thus, in the Court's view, the contract unambiguously provides for FS2's unilateral right to modify the scope of the Territory, and to do so outside the parameters of the Agreement. Therefore, no

change to the Agreement is needed for FS2 to modify Giugliano's Territory and Section 11.02 is not implicated in that process.

Accordingly, the Defendants' motion, to the extent it seeks to dismiss the Plaintiff's cause of action based on breach of contract, is granted.

## H.   As to Whether Giugliano Plausibly Stated a Claim for Unpaid Wages Under the New York Labor Law

The alleged basis for the Plaintiff's wage claim under the NYLL is as follows: (i) Giugliano "initiated" sales transactions in certain geographic sales territories; (ii) he is entitled to commissions in connection with those transactions that he initiated; (iii) the commissions to which he is allegedly entitled constitute "wages" that he "earned" within the meaning of the NYLL; (iv) before he received such commissions, FS$^2$ reassigned the subject geographic sales territories away from Giugliano to younger salespersons; and (v) thus, therefore, Giugliano was deprived of the wages that are owing to him.

In this regard, Giugliano brings a claim not only against FS2, but against the individual Defendants Murphy, Wolfe, and Shain, asserting that they "regularly exercised control over, and were responsible for, [FS$^2$]'s operations in manner that related to Plaintiff's employment."

The Defendants contend that these allegations do not suffice to state a plausible claim for relief under the NYLL because the Plaintiff has no enforceable contract right to the alleged commissions. In particular, the Defendants assert that the Plaintiff has not "earned" the alleged commissions within the meaning of the statute. Rather, Giugliano alleges to have only "initiated" the subject sales before

his Territory was reassigned, which is insufficient under the Agreement to entitle the Plaintiff to commissions on those sales.

In this regard, the Defendants contend that, under the Agreement, a commission is not "earned" until FS² receives a "dealer manager fee" associated with the underlying sale, not when the sale is initiated, or even completed.

Moreover, the Defendants contend that, under the Agreement, Giugliano is not entitled to receive payment on any commission unless, at the time payment is due, he is registered in good standing or employed by FS². The Defendants assert that, because the Plaintiff satisfies neither of these conditions, he may not receive any commissions.

Under NYLL § 190(1), "wages" are defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." That provision further defines "commission salesman" as "any employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any other thing and whose earnings are based in whole or in part on commissions."

In this regard, the Court notes that Giugliano fails to allege any facts regarding the nature of FS²'s business or his own job responsibilities. Based on the operative pleading alone, the Court is unable to determine whether Giugliano was a "commission salesman" within the meaning of the statute, and if he was, what exactly he was selling. However, the parties do not dispute that Giugliano was

principally engaged in selling goods of some sort and that his earnings were based at least in part on commissions. Accordingly, the Court will assume this to be the factual basis.

NYLL § 191(1)(c) provides, in relevant part, that "[a] commission salesperson shall be paid wages . . . , commissions and all other monies earned or payable in accordance with the agreed terms of employment." It is beyond dispute that the phrase "in accordance with the agreed terms of employment" means that the parties to an employment agreement may define for themselves the circumstances under which wages are "earned." See Dreyfuss v. eTelecare Global Solutions-US, Inc., 08-cv-1115, 2010 U.S. Dist. LEXIS 107725, at *15 (S.D.N.Y. Sept. 30, 2015) ("The law is clear that '[a]n employer and employee can agree about the point in time when a commission becomes 'earned' and, therefore, a 'wage' ") (quoting Chenensky v. N.Y. Life Ins. Co., 07-cv-11504, 2009 U.S. Dist. LEXIS 119549, at *18-*19 (S.D.N.Y. Dec. 22, 2009)); see generally Pachter v. Bernard Hodes Grp., Inc., 10 N.Y.3d 609, 861 N.Y.S.2d 246, 891 N.E.2d 279 (2008) (deciding, on a certified question from the Second Circuit, "that the determination of when a commission is earned is governed by the parties' express or implied agreement").

Here, the Agreement between Giugliano and FS[2] clearly defines the parameters of "earned" wages, as follows:

> Associate [Giugliano] specifically waives payment of any and all commissions due until such time as the Broker [FS[2]] is in receipt of the consideration (the dealer manager fee paid to the Broker) in respect of which the commissions relate.

In the Court's view, this provision explicitly identifies a condition precedent to Giugliano's entitlement to commissions: receipt by FS² of the so-called "dealer manager fee" associated with the underlying sales transaction. However, the Plaintiff does not allege that this condition precedent was satisfied.

In this regard, Giugliano fails to specify any particular sales transaction for which he is allegedly owed a commission. Rather, without citing any authority, he claims that he "is not obligated to specify with particularity every transaction for which his owed commissions arise." However, even if this were true, Giugliano has set forth no transactions at all. In addition, he fails to allege even the vaguest supporting details, including the approximate timing of the transactions; the approximate amount of commissions allegedly owed; and, most importantly from a contract standpoint, that FS² received the dealer manager fee that would legally entitle him to such commissions.

In the absence of these important facts, there is no plausible basis to conclude that Giugliano "earned" the commissions that he seeks to recover, as set forth in the Agreement. As a result, the Court is unable to reasonably infer that FS² and the individual Defendants are liable for the alleged failure to pay wages. Accordingly, the Court finds that the Plaintiff has failed to plausibly allege a cause of action under the NYLL based on unpaid wages.

Having so held, the Court need not address the Defendants' alternative contention that Giugliano is barred from receiving the subject commissions because he is neither registered in good standing nor employed by FS².

Accordingly, to the extent the Defendants seek to dismiss the Plaintiff's causes of action under the NYLL based on unpaid wages against FS² and the individual Defendants, their motion is granted.

## I.    As to Whether Giugliano Has States Claims Based on Conversion and Unjust Enrichment

The Defendants assert two alternative bases for dismissing Giugliano's causes of action based on conversion and unjust enrichment under New York law. First, the Defendants contend that those claims are impermissibly duplicative of his breach of contract claim.  Second, they contend that Giugliano failed to plausibly plead the essential elements of these claims.

The Court notes that Giugliano gives only passing attention to this aspect of the Defendants' motion.  In a single paragraph, he admits that his conversion and unjust enrichment claims are "predicated under the same set of facts" as his breach of contract claim.  However, he states, again without reference to authority, that his "breach of contract claim has no bearing on the viability of [his] common law claims" and that he is not required "to plead either [his conversion or unjust enrichment] claim with a higher level of specificity."  The Court disagrees.

Contrary to the Plaintiff's contention, it is well-settled that claims for conversion and unjust enrichment "cannot lie [where] they are duplicative of [a] breach of contract cause of action."  Ainbinder v. Money Ctr. Fin. Grp.. Inc., 10-cv-5270, 2013 U.S. Dist. LEXIS 47103, (E.D.N.Y. Feb. 28, 2013) (Report and Recommendation) (collecting cases), adopted, 2013 U.S. Dist. LEXIS 45501 (E.D.N.Y. Mar. 25, 2013); see Karmilowicz v. Hartford Fin. Servs. Grp., 494 F. App'x

153, 158 (2d Cir. 2012) (noting that "a claim to recover damages for conversion cannot be predicated on a mere breach of contract" (quoting <u>Wolf v. Nat'l Council of Young Israel</u>, 264 A.D.2d 416, 417, 694 N.Y.S.2d 424 (2d Dep't 1999))); <u>Rabin v. MONY Life Ins. Co.</u>, 387 F. App'x 36, 42 (2d Cir. 2010) (finding that "the notion of unjust enrichment applies where there is no contract between the parties" and holding that, because the subject matter at issue in that case was governed by a written contract, the plaintiff had "no cognizable claim for unjust enrichment separate from his breach of contract claim" (internal quotation marks and citations omitted)); <u>Coyne Int'l Enters. Corp. v. Mylan Pharms., Inc.</u>, 13-cv-821, 2014 U.S. Dist. LEXIS 82576, at *8-*9 (N.D.N.Y. June 18, 2014) ("Under New York law, there can be no cause of action for unjust enrichment when there is a valid contract governing the same subject matter between the parties") (quoting <u>Clark-Fitzpatrck, Inc. v Long Island R.R. Co.</u>, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)); <u>Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.</u>, 03-cv-9141, 2004 U.S. Dist. LEXIS 17406, at *20-*21 (S.D.N.Y. Aug. 30, 2004) (dismissing a conversion claim that was "[b]ased on essentially the same facts alleged in [a] breach of contract claim[ ]").

Here, to the extent Giugliano has based his conversion and unjust enrichment claims on the same facts as his breach of contract claim, the Court finds them impermissibly duplicative. Thus, the Court need not reach the issue of whether the Plaintiff has sufficiently plead the elements of those claims.

Accordingly, to the extent the Defendants seek to dismiss the Plaintiff's causes of action based on conversion and unjust enrichment under New York law, their motion is granted.

### III. Conclusion

Based on the foregoing, the Defendants' motion to dismiss is granted in part and denied in part.

The Court grants the motion and dismisses the Plaintiff's cause of action under the NYLL based on unpaid wages. The Court also dismisses the Plaintiff's causes of action based on breach of contract, conversion, and unjust enrichment.

The Court denies the motion as to the Plaintiff's causes of action under the ADEA, the NYSHRL, and the NYCHRL, based on age discrimination and discriminatory retaliation.

In addition, the Court denies without prejudice the Plaintiff's cross-motion to amend his Complaint.

**SO ORDERED**

Dated: Central Islip, New York
September 1, 2015                    */s/ Arthur D. Spatt*_____
                                     ARTHUR D. SPATT
                                     United States District Judge